IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| THOMAS A. VAUGHN, | § | |
| Institutional ID No. 63446-018, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:19-CV-00129-BU |
| | § | |
| RICHARD BASSETT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff THOMAS A. VAUGHN, an inmate currently incarcerated in the Bureau of Prisons ("BOP") FCI Big Spring and proceeding pro se, filed this filed this civil action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), on June 17, 2019, alleging deliberate indifference to his serious medical needs by FCI Big Spring personnel. *See* Dkt. No. 2 at 4-5. The Court granted Vaughn permission to proceed *in forma pauperis*, which subjects his complaint to the Court's preliminary screening measures under 28 U.S.C. §1915(e)(2). Dkt. No. 5. And because Vaughn brings his suit against government officials, his Complaint is also subject to screening under 28 U.S.C. § 1915A. The case was transferred to the undersigned to conduct the screening required by those statutes. Dkt. No. 7.

Vaughn has not consented to a magistrate judge exercising the full jurisdiction of this Court, thus the undersigned submits these Findings, Conclusions, and Recommendations for the disposition of Vaughn's claims. *See id.*

1

## I. PRELIMINARY SCREENING

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2016); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified and authenticated" (internal quotations omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate

the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). Plaintiffs must plead enough facts to demonstrate that their claims have "substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam). This means that the facts pled must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.* 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## II. FACTUAL BACKGROUND

Vaughn alleges medical care denial in violation of the Eighth Amendment by Defendants Lieutenant Richard Bassett, Anselmo Padilla-Luna, R.N., FCI Big Spring Health Administrator Teleiza Crnkovich, and FCI Big Spring Assistant Health Administrator Mary Pence. Dkt. No. 2 at 4-5.

### A. <u>Vaughn's injury and immediately following medical care</u>

Vaughn states on that on August 19, 2017, he was injured when he collided with a fellow inmate while playing an evening softball game. *Id.* at 6. Vaughn stated that he was in severe pain, and saw in a bathroom mirror that his cheekbone was "visibly caved in." *Id.* Vaughn walked to the lieutenants' office, where he found Lt. Bassett, and requested

medical care, stating that he was in severe pain, had a bloody nose, and pointing to his caved-in cheekbone, which Vaughn states Bassett acknowledged.[1] *Id.*

Vaughn states that he waited outside the lieutenants' office while Bassett stepped away. *Id.* Vaughn believes, based on his understanding of internal prison procedures, that Bassett stepped away to consult with the on-duty nurse, who Vaughn believed was Anselmo Padilla-Luna. *Id.* When Bassett returned, he told Vaughn that he could not see a medical provider that night. *Id.*; Dkt. No. 19 at 3. Vaughn told Basset that he needed to go to the hospital because head injuries are serious, but Basset ordered him back to the dorm. *Id.* Vaughn stated that he did not sleep that night due to severe pain, nausea, and fear of a concussion. *Id.*

The next morning, Vaughn again requested medical care, and was examined by a nurse who sent him to the Scenic Mountain emergency room, a private medical facility. *Id.* There, he received a CAT scan which showed commuted fractures of the left or orbital floor and the anterior and lateral wall of the left orbital and the left zygomatic arch. *Id.*

Vaughn states that due to the severity of his injuries, he was transferred by ambulance to Medical Center Hospital in Odessa. *Id.* The Odessa ER physician consulted with Dr. Tolia, an ophthalmologist, and Dr. Cook, a maxillofacial surgeon. *Id.* The Odessa ER released Vaughn with instructions to follow-up with Dr. Tolia within four to five days and with Dr. Cook within two days. *Id.* He was also given a prescription for acetaminophen-codeine to be taken four times daily, every six hours. *Id.*

---

[1] Vaughn also stated that another guard, Lieutenant Rodriguez, was there with Bassett, but Vaughn does not bring any claims against Rodriguez. *See* Dkt. No. 2.

4

Vaughn claims that when he returned to FCI Big Spring, his care came under the management of Crnkovich, the FCI Big Spring Health Administrator, and Pence, the FCI Big Spring Assistant Health Administrator, who he alleges are responsible for the administration of inmate appointments and medical care. *Id.* Vaughn claims that Crnkovich and Pence never arranged Vaughn's follow-up appointment with the ophthalmologist despite the instruction from the Odessa ER. *Id.* at 7.

Vaughn also alleges that FCI Big Spring medical staff, under a policy or custom implemented by Crnkovich and Pence, altered his acetaminophen-codeine prescription to twice daily, instead of the four-times daily as prescribed, causing him to suffer pain, and loss of sleep and appetite. *Id.* at 7-8, Dkt. No. 19 at 6.

B. Continuing care for Vaughn's facial fracture

As instructed by the Odessa ER, Vaughn had a follow-up appointment with maxillofacial surgeon Dr. Cook at Midland Plastic Surgery Center on August 22, 2017, three days after his accident. Dkt. No. 2 at 7. Vaughn states that Dr. Cook "expressed bewilderment" that FCI Big Spring would send Vaughn without his CAT scan images. *Id.* Dr. Cook sent Vaughn back to FCI-Big Spring with a written order for FCI Big Spring to obtain and send the images. *Id.* Dr. Cook told Vaughn that Vaughn needed to return with the images quickly because small facial bones heal within four to six weeks, and corrective surgery becomes riskier and more difficult if bones have mended. *Id.*

When Vaughn returned to FCI Big Spring, he states that he told the medical staff about Dr. Cook's urgent need for the CAT scan images. *Id.* When two weeks passed without a return visit, Vaughn states that he became increasingly concerned about the delay

and began writing "copout" email messages to Crnkovich and Pence, beginning on September 5, 2017.[2] *Id.* Between September 5 and 27, Vaughn sent five copout messages, telling Crnkovich and Pence of the danger of delaying treatment and asking for help scheduling his follow-up appointment with Dr. Cook. Dkt. No. 19 at 6-7.

Then on September 22, 2017, after repeated inquires by Vaughn and his offer to have his family help, Vaughn states that Crnkovich and Pence retaliated against him by threatening to terminate his care if his family tried to help provide records to Dr. Cook.[3] Dkt. No. 2 at 8. Regardless of his repeated requests, Vaughn claims that Crnkovich and Pence ignored the order to send the records to Dr. Cook. Dkt. No. 19 at 6-7.

Vaughn did not return to Dr. Cook until October 2, 2017, more than six weeks after the injury and Vaughn's first visit. Dkt. No. 2 at 7. There, Vaughn states that Dr. Cook told him that because FCI Big Spring did not send the CAT scan images, Dr. Cook had to request the records from Scenic Mountain himself. Cook explained that the delay foreclosed surgery as a safe treatment option because Vaughn's bones had already healed and would have to be rebroken which would cause a greater risk to his vision and more severe scarring. *Id.* Vaughn claims that Dr. Cook also told him that although he would have to live with permanent disfigurement, the risk of surgery would outweigh the benefits. *Id.*

---

[2] Although not clearly stated, Vaughn appears to allege that the email "copouts" were communication with the Health Administrators at FCI Big Spring, and therefore, were direct communication with Crnkovich and Pence. *See* Dkt. No. 2 at 7. The authenticated records include the email chain but are from "Health Services." Taking the facts by Vaughn as true at this stage, as the Court must, the undersigned assumes that the Health Services email was direct communication between Vaughn and both Crnkovich and Pence.

[3] As detailed further below, the perceived threat was a statement that any family contact with Dr. Cook, an outside medical provider, will necessitate terminating treatment with that provider due to security concerns.

Vaughn claims that Crnkovich and Pence ignored the order to send the records, despite his repeated requests, and caused Vaughn's treatment to be so delayed that he is now permanently disfigured. *See id.* at 6-7.

C. Authenticated BOP records

Review of the authenticated records from FCI Big Spring provide additional context for Vaughn's allegations.

The records confirm Vaughn's series of examinations the day after his injury, on August 20, 2017, first at FCI Big Spring, then at Scenic Mountain ER where a CAT scan was performed, and finally at the Odessa ER. When Vaughn returned to FCI Big Spring from the Odessa ER, Nurse Padilla-Luna wrote in a Medical Trip Encounter Administration Note that Vaughn arrived with recommendations for follow-up visits with Drs. Tolia and Cook. Padilla-Luna also changed Vaughn's acetaminophen-codeine prescription from 300mg four times a day to 300mg twice daily. Crnkovich later added an internal consultation order for a follow-up with Dr. Cook, the maxillofacial surgeon, but not with Dr. Tolia, the ophthalmologist.

The authenticated records show that in the weeks immediately following his injury, Vaughn continued to receive treatment at FCI-Big Spring for jaw pain, nausea, and difficulty eating.

On August 22, 2017, two days after his ER visit, Vaughn saw Dr. Cook in Midland, who sent a visit report back to FCI Big Spring stating "[w]aited on performing surgery since pt [sic] was able to see." Dr. Cook noted had he had the CT scan report but no images, and wrote "I would like to view the patients [sic] actual imaging before proceeding with

7

surgery . . . for surgical planning purposes." When Vaughn returned to FCI Big Spring, medical staff (not named as a defendant) entered a Medical Trip Encounter Administration Note stating that Vaughn was "pending scheduling with maxillofacial surgeon" who "plan[ned] to get imaging and consider surgery necessary," noting the urgent timeline with a target date of August 25, 2017. The Administrative Note states "[p]lease send images/reports to appointment."

On September 5, past the August 25 target date, Vaughn began sending the "copout" email messages, included in the authenticated records, showing Vaughn's repeated requests for a follow-up appointment with Dr. Cook and stating the need for urgency. Health Services, who Vaughn alleges is Crnkovich and Pence, responded to each email stating that the appointment with Dr. Cook was waiting on medical records, and that Health Services was working on his appointment. After one request, Health Services states "[t]he physician has your records and has always had access to this information, he just needed to obtain it at his will." When Vaughn asked if his family could help obtain the records, Health Services stated that if Vaughn's family communicates with the doctor, his care with Dr. Cook must terminate due to security concerns.

When Vaughn returned to Dr. Cook on October 2, the visit records note the delay. In Dr. Cook's visit notes, he acknowledged a "substantial delay in receiving his imaging," and that he thought FCI Big Spring was sending the records, and then after the long delay, he requested the records in writing from Scenic Mountain himself. Dr. Cook states that Vaughn had no vision loss or functional deficit, and decided to defer surgery, stating that

surgery at this point would require significant bone grafting for an ultimately cosmetic procedure. Dr. Cook did not prescribe more follow-up visits.

In his claim, Vaughn seeks $200,000 for both compensatory and punitive damages for his pain, suffering, emotional distress, embarrassment, humiliation, and permanent disfigurement. Dkt. Nos. 2 at 5; 19 at 8.

## III.  DISCUSSION AND ANALYSIS

Vaughn claims that the Defendants violated his Eighth Amendment rights through deliberate indifference to his serious medical needs in their individual capacities as employees of FCI Big Spring, a federal correctional facility. *See* Dkt. Nos. 2, 19. Vaughn claims that Basset and Padilla-Luna denied Vaughn medical care on August 19, 2017, when he first requested treatment for his head injury, thus subjecting him to unnecessary, severe pain and fear of a concussion. *See* Dkt. No. 19 at 3-5.

Vaughn claims that Crnkovich and Pence were deliberately indifferent to his serious medical needs for his facial injury by (1) delaying sending his medical records to the surgeon, resulting in his permanent disfigurement, and (2) failing to schedule the follow-up visit with the ophthalmologist. *See id.* at 6-7. Vaughn also alleges that Crnkovich and Pence retaliated against him by threatening to terminate his treatment. *See id*. Lastly, Vaughn alleges that Crnkovich and Pence violated his rights by implementing an FCI Big Spring policy that denied him necessary pain medication. *Id.*

A.  Deliberate indifference claims against Defendants

A *Bivens* claim is "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Correctional Servs. Corp. v.*

*Malesko*, 534 U.S. 61, 66 (2001). The Supreme Court has approved a *Bivens* action under the Eighth Amendment against federal officials for failure to provide medical treatment. *See Carlson v. Green*, 446 U.S. 14 (1990); *see also Ziglar v. Abbasi*, 137 S.Ct. 1843, 1864 (2017) (a *Bivens* claim for prisoner mistreatment is limited, "specifically, for failure to provide medical care.").

Under the Eighth Amendment, prison officials have a duty to provide adequate medical care. *See Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). An inmate seeking to establish an Eighth Amendment violation regarding medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs" (emphasis in original)). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Galdwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

Deliberate indifference "is an 'extremely high' standard to meet" (*Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009)), and requires satisfaction of both an objective and a subjective component. *Rogers*, 709 F.3d at 410. An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert*, 463 F.3d at 345–46. This means that when considering all the facts and circumstances known to the official, would a reasonable person have perceived that the inmate was exposed to a substantial risk of

serious bodily injury? *Farmer v. Brennan*, 511 U.S. 825, 837-42 (1994). Only if this question is answered in the affirmative is the objective component satisfied. *Id.*

"But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment." *Id.* at 838. And for this reason, deliberate indifference also requires a subjective component. Satisfaction of the subjective component requires that a prison official (1) knows the inmate faces a substantial risk of serious harm, and (2) disregards that risk by failing to take reasonable measures to abate it. *Id.* at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (stating a prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

"[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *see Lawson v. Dall. Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (noting that deliberate indifference is a "subjective inquiry," and inmate must show prison official was actually aware of risk of harm and consciously ignored it).

A delay in medical care can constitute an Eighth Amendment violation only if there was deliberate indifference that results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Substantial harm is met when a plaintiff suffers lasting

complications from the injury. *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006). Lasting complications do not include permanent disfigurement or decreased function unless accompanied by other severe symptoms. *See Bias v. Woods*, No. 7:99-CV-033-R, 2002 WL 1750792, at *3 (N.D. Tex. July 26, 2002) (finding substantial harm where a lack of treatment caused a prisoner to suffer exceptional pressure injuries); *cf. Morris v. Harvell*, No. 2:16-CV-0033, 2016 WL 1660009, at *2 (N.D. Tex. Mar. 2, 2016), *R & R adopted*, No. 2:16-CV-0033, 2016 WL 1650780 (N.D. Tex. Apr. 25, 2016) (determining that an untreated broken finger that resulting in deformity, decreased range of motion, numbness, and pain was not a substantial harm).

Because a court may use authenticated medical records to pre-screen a prisoner's claims, "medical records of sick calls, examinations, diagnoses, and medications may rebut the allegations" of deliberate indifference to a serious medical need. *Banuelos*, 41 F.3d at 233–35. And where a prisoner claims that the medical treatment provided failed to adequately treat his needs, medical records showing extensive treatment can be used to rebut a claim of deliberate indifference. *Norton v. Dimazana*, 122 F.3d 286, 291–92 (5th Cir. 1997). Then, the claim the prisoner alleges is really about medical judgment, which may not give rise to a constitutional violation. *See Tijerina v. Stanley*, 804 F. App'x 277, 278 (5th Cir. 2020) (finding that the "voluminous medical records" established that the prisoner received treatment, reducing his claim to a disagreement about the provided treatment).

The undersigned now addresses Vaughn's claims against each Defendant in turn.

12

1.  Lt. Bassett

Vaughn states that he asked Bassett for help obtaining immediate medical treatment, but Bassett refused after what Vaughn assumes was a consultation with FCI Big Spring medical staff, and instead Bassett ordered Vaughn back to the dorms. Dkt. No. 19 at 4. Vaughn alleges that Bassett had a duty under BOP policy to demand immediate medical care for a severe trauma, up to authorizing transportation to an outside hospital. *Id*. Vaughn did not receive treatment until the following morning, causing him to suffer physical pain and emotional distress throughout the night from the knowledge that he had an untreated severe injury. *Id.*

Vaughn fails to state a plausible claim for deliberate indifference by Bassett under both the objective and subjective components. A serious medical need is one for which "treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12. Objectively, the facts and circumstances known to Bassett, as alleged by Vaughn, are that after consulting with a nurse, Bassett told Vaughn that he did not need medical care that night. Thus, no treatment had been recommended.

 Moreover, when Vaughn asked Bassett to see a medical provider, Vaughn was walking and talking on his own, had no difficulty breathing or seeing, was cognitively functional, and had never lost consciousness. Vaughn did not present with a severe trauma, as he alleges, or a need that was so apparent that even a layperson would recognize it. Although Vaughn states he had a visible "deformity" and told Bassett of pain and a

nosebleed, these symptoms alone do not objectively demonstrate a substantial risk of serious bodily harm.

Further, the authenticated records support this assessment. The records include a description of Vaughn's injury as he presented for medical examination the morning after his injury. There, Vaughn complained of pain in the left side of his face, and had a facial deformity with mild swelling. Vaughn stated he had a bloody nose the night prior. His injury did not pose an objectively substantial risk of serious bodily harm such that Bassett, a correctional officer, would recognize that emergency care was required. *See Morris v. Bria*, No. 7:17-CV-034-O-BP, 2018 WL 2427176 (N.D. Tex. May 30, 2018) (finding no serious medical injury in an inmate who complained of swelling, dizziness, nausea, blurred vision, cuts and bleeding from face and head wounds); *see also Irby v. Hinkle*, No. 3:19-CV-90, 2021 WL 3783354 (S.D. Tex. July 19, 2021) (finding no facts that showed an objectively substantial risk to an inmate's health who presented with headache, bloody nose, and facial swelling but was able to walk, talk, was alert, and had normal vital signs).

But even if the Court assumes that Vaughn can satisfy the objective component of deliberate indifference on his claim against Bassett, Vaughn's factual allegations fail to plausibly support the subjective component. Here again, Vaughn's own statements indicate that Bassett did not ignore his complaints, but rather Vaughn alleges that Bassett consulted a medical professional. And only after presumably being told that immediate medical care was not indicated did Bassett turn Vaughn away. These allegations fail to plausibly support that Bassett perceived a substantial risk of serious harm to Vaughn and consciously ignored it.

Vaughn states that he told Bassett of severe pain from the injury. Non-life-threatening injuries can constitute a serious medical need where the injuries cause severe pain that is left untreated. *See, e.g., Harris*, 198 F.3d at 159-60 (holding that a prisoner stated a deliberate indifference claim when he alleged that prison officials only performed a cursory inspection of his mouth and ignored his repeated complaints of excruciating pain for eight days after his jaw re-broke). But here, Vaughn was examined, taken to the hospital, and received pain medication within 24 hours of his injury, and continued to receive pain medication, albeit not as frequently as he desired it, as addressed below.

At best, Vaughn claims that Bassett had a duty under BOP policy to demand immediate medical attention or authorize transportation to a hospital, even after being told by a medical professional that Vaughn did not need immediate treatment. *See* Dkt. No. 19 at 4. But as explained above, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson,* 245 F.3d at 459.

For these reasons, the undersigned FINDS that Vaughn has failed to plausibly support both the objective and subjective components of deliberate indifference on his claim against Bassett and RECOMMENDS that this claim be DISMISSED for failure to state a claim upon which relief may be granted.

2. Padilla-Luna

Next, Vaughn claims that Nurse Padilla-Luna violated his Eighth Amendment rights through deliberate indifference to Vaughn's need for immediate medical care after his injury on August 19, 2017. Dkt. No. 2 at 6. Vaughn believes that when he asked Bassett

for treatment, Bassett consulted with Padilla-Luna, the nurse Vaughn speculates was on duty, and that Padilla-Luna decided not examine Vaughn or arrange for his treatment at the Big Spring emergency room, in violation of BOP policy for head injuries. Dkt. No. 19 at 5. Vaughn appears to allege that Padilla-Luna's denial of treatment precipitated Bassett's denial, as alleged above. *See id*. Vaughn claims that the delay in treatment caused him to suffer physical pain and emotional distress throughout the night. *Id.* at 4.

In his Complaint, Vaughn does not allege sufficient facts from which the Court can plausibly infer that Padilla-Luna was actually on duty or that he was consulted by Bassett. He merely assumes that these facts are true.

Vaughn's claims against Padilla-Luna are speculative, and certainly fail to meet the "extremely high standard" of deliberate indifference to serious medical needs. In Vaughn's more definite statement, he concedes that he is unsure that Padilla-Luna was consulted on August 19. *See id.* at 3. Vaughn is required to plead facts that allow the Court "to infer more than the mere possibility of misconduct" by Padilla-Luna. *Harold H. Huggins Realty, Inc.,* 634 F.3d at 796. And in the absence of plausible facts that give rise to personal involvement, the Court cannot ascribe a constitutional violation.

For these reasons, the undersigned FINDS that Vaughn has failed to allege sufficient facts to plausibly support his claim against Padilla-Luna and RECOMMENDS that this claim be DISMISSED as frivolous.

### 3. Crnkovich and Pence

Vaughn claims that Crnkovich violated his Eighth Amendment rights by denying or delaying medical treatment for Vaughn's serious medical needs. *See* Dkt. No. 2. Vaughn

16

brings identical claims against Pence, appearing to assert that Crnkovich and Pence work in tandem as the FCI Big Spring Health Administrator and Assistant Health Administrator.[4] *See* Dkt. No. 19 at 6-7.

First, Vaughn claims that Crnkovich and Pence knew of Dr. Cook's urgent order for Vaughn's CAT scan records. *Id.* at 6. Vaughn stated that he told Pence on August 25, 2017, and Crnkovich on September 7, 2017, of Dr. Cook's pressing need for the records, due to the speed of small bone repair. Vaughn further states that he emailed Crnkovich and Pence four more times requesting a follow-up appointment, action on the records request, and stating his urgent need for care. *Id.* Vaughn alleges that Crnkovich and Pence failed to act, thus delaying his care to the point that his facial bones healed improperly and prevented him from receiving corrective surgery. Dkt. No. 2 at 8.

Again, the standard for deliberate indifference to medical need is a high bar to meet, and here, Vaughn fails to meet it. Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. "Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation." *Evans v. Brouwer*, No. 9:13-CV-302, 2017 WL 4216067, at *1 (E.D. Tex. Sept. 22, 2017) (internal citations omitted). Vaughn asserts that Crnkovich and Pence failed to act quickly enough to send the CAT scan records, but

---

[4] A plaintiff bringing a Section 1983 claim must specify the personal involvement of each defendant. *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *see Izen v. Catalina*, 382 F.3d 566, 570 n.3 (5th Cir. 2004) (recognizing *Bivens* and Section 1983 actions are analogous). Because personal involvement is an essential element, recovery is not available based on supervisor liability alone. *Thompson v. Steele*, 709 F. 2d 381, 382 (5th Cir. 1983).

Here, construing all facts in a light most favorable to Vaughn, it is plausible that Crnkovich and Pence, as the Health Administrators and purported supervisors of FCI Big Spring medical care, were the persons responsible for scheduling inmate medical appointments. Thus, Vaughn has pleaded enough plausible facts to support his claims that Crnkovich and Pence were personally involved in denying or delaying his medical care.

the authenticated records of Vaughn's communications with Health Services (purportedly Crnkovich and Pence) show responses to each of his inquiries. Crnkovich and Pence did not exhibit the level of wanton apathy to his condition required to show deliberate indifference.

And the records request was subject to confusion among Vaughn's medical providers. Vaughn's CAT scan imaging was performed by Scenic Mountain, an independent medical treatment facility, and Dr. Cook first requested the records from FCI Big Spring. Once Dr. Cook contacted Scenic Mountain, as his second treatment note suggests, he received the records and was able to continue Vaughn's treatment. Such confusion leading to treatment delays could amount to negligence or a "lapse in professional judgment," but fails to rise to the level of a wanton or reckless act that qualifies a constitutional deprivation. *See Evans*, 2017 WL 4216067, at *1.

Although Vaughn alleges that this delay caused him to be permanently disfigured, disfigurement without additional complications fails to meet the "substantial harm" showing required. *See Baker v. Kimberly Fisk, P.A.*, No. 2:12-CV-0080, 2014 WL 947488, at *6 (N.D. Tex. Mar. 11, 2014) (finding that a delay in getting medical records that is unattributable to the defendant and does not show the delay caused any harm fails to show a constitutional violation). Vaughn's last visit with Dr. Cook notes that Vaughn has no continuing complications with his vision or upper jaw mobility, and that any corrective surgery would be cosmetic only. Vaughn has not pleaded facts showing lasting complications. *See Morris*, 2016 WL 1660009, at *2 (determining that a permanent deformity is not substantial harm).

In the same manner, Vaughn fails to allege an injury resulting from his claim that Crnkovich and Pence ignored the Odessa ER doctor orders to follow-up with the ophthalmologist. Dkt. No. 2 at 7. Without any injury or harm stemming from a complete lack of further ophthalmological care, Vaughn cannot plausibly claim that he suffered from a substantial risk of harm from a serious medical need.

For these reasons, the undersigned FINDS that Vaughn has failed to plausibly allege deliberate indifference on the parts of Crnkovich and Pence and RECOMMENDS that all such claims be DISMISSED with prejudice as for failure to state a claim upon which relief may be granted.

B.  Retaliation

Next, Vaughn asserts that Crnkovich and Pence retaliated against him when he asked if a family member could help fulfill Dr. Cook's records request to expedite Vaughn's surgical consultation appointment. Dkt. Nos. 2 at 8; 19 at 6. Vaughn claims that Crnkovich and Pence threatened to terminate his care in retaliation. *Id*.

"To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir.1998)). An adverse action is one that is "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Id.* at 686. In other retaliation contexts, the Fifth Circuit has held that verbal threats are not sufficient to qualify as a retaliatory adverse act. *See Bell v. Woods*, 382 F. App'x 391 (5th Cir. 2010). Courts in the

Fifth Circuit have been unwilling to find actionable retaliation where threats were not realized. *See e.g. Arita v. Stagg*, No. 09-0158, 2010 WL 370343, at *3 (M.D. La. Jan. 29, 2010) (alleged retaliatory conduct consisting of threats and verbal abuse was insufficient); *see also Cobb v. Simmons*, No. 2:09-CV-0034, 2009 WL 2016072, at *10-11 (N.D. Tex. July 9, 2009) (threats implying that a major disciplinary action will be brought were insufficient for purposes of retaliation analysis).

The facts as alleged by Vaughn fail to meet the elements on their face. As analyzed above, Vaughn's delayed treatment with Dr. Cook does not rise to a constitutional deprivation, failing to satisfy the first and second elements. Further, Vaughn's allegation of Defendants' verbal threat to terminate treatment is not an adverse action. Finally, the email message chain shows that Crnkovich and Pence stated that if Vaughn's family contacted the doctor, treatment with that particular doctor would terminate due to security concerns. An inmate's family contacting an outside physician is a legitimate penological concern for prison administrators, and does not serve as support for a claim of retaliation. *See Breshears v. Brown*, 150 F. App'x 323, 325 (5th Cir. 2005) (finding actions based on a legitimate penological interest such as a security concern undermine a retaliation claim).

For these reasons, the undersigned RECOMMENDS that Vaughn's retaliation claims against Crnkovich and Pence be DISMISSED with prejudice for failure to state a claim upon which relief may be granted.

C.    Impermissible policy or custom

Finally, Vaughn alleges that Crnkovich and Pence, as the FCI Big Spring Health Administrator and Assistant Administrator, violated his constitutional rights by

implementing a custom or policy that denied him effective pain medication. Dkt. Nos. 2 at 7; 19 at 6. In Vaughn's more definite statement of his claims against both Crnkovich and Pence, he states that "her policy or custom caused my pain medication to be given twice daily greatly impacting it's [sic] effectiveness." Dkt. No. 19 at 7. Vaughn states that because of the adjustment, he "went longer than six hours often and the effectiveness of the pain medication was greatly hindered causing [him] to suffer severe pain and difficulty eating, and sleeping." *Id.* at 3.

A federal inmate may bring a *Bivens* action against a prison administrator, establishing liability by alleging facts that show the administrator was either personally involved in the acts that caused the constitutional deprivation, or implemented "a policy so deficient that the policy itself acts as a deprivation of constitutional rights." *Thompson v. Crnkovich,* No. 1:16-CV-055-BL, 2017 WL 5514519, at *2 (N.D. Tex. Nov. 16, 2017). A prison policy that reduces prescriptions to dispense twice per day, particularly when the medication contains a narcotic, like acetaminophen-codeine, is an adjustment in medical treatment subject to professional medical judgment, and does not create a constitutional deprivation under the deliberate indifference standard. *See Gobert*, 463 F.3d at 346.; *see also Bass v. Corr. Health Servs.*, No. CV-13-00009-PHX-FJM, 2014 WL 348198, at *4 (D. Ariz. Jan. 31, 2014) (finding that a policy of only dispensing medications twice per day was a difference in medical judgment, not a denial of medical treatment).

Here, Vaughn claims that Crnkovich and Pence implemented a policy or custom that allowed medical staff to alter prescribed pain medication, subjecting him to severe pain. In the authenticated records, Vaughn's prescription for acetaminophen-codeine was

21

reduced from four times daily to twice daily. Vaughn ascribed liability for that change to Crnkovich and Pence as the FCI Big Spring Health Administrators, against them in their supervisory capacities.

As alleged by Vaughn, these facts fail to allege supervisory liability for a policy that itself is so deficient that it acts as a deprivation of constitutional rights. *See Thompson*, 2017 WL 5514519, at *2 (finding policy implemented by Crnkovich that led to denial of surgical intervention did not create a constitutional violation). Like Vaughn's deliberate indifference claims addressed above, this alleged policy or custom amounts to a disagreement about proper medical treatment, not a violation of a constitutional right.

For these reasons, the undersigned RECOMMENDS that all claims against Crnkovich and Pence be DISMISSED with prejudice for failure to state a claim upon which relief may be granted.

## IV.  CONCLUSION

For the reasons explained in these Findings, Conclusions, and Recommendations, the undersigned RECOMMENDS that all of Vaughn's claims against Bassett, Padilla-Luna, Crnkovich, and Pence be DISMISSED with prejudice under 28 U.S.C. §§1915(e)(2) and 1915A.

## V.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P.

72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## VI.  TRANSFER OF CASE

Having completed the preliminary screening of Vaughn's claims under 28 U.S.C. §§ 1915(e)(2) and 1915A, the undersigned ORDERS that this case be TRANSFERRED back to the docket of the Senior United States District Judge and designated as Civil Action No. 1:19-CV-00129-C.

ORDERED this 3rd day of May, 2022.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE